

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| RICHARD L. FOGEL, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | JUDGE JOAN H. LEFKOW |
| v. | ) | Case No.: |
| | ) | |
| GORDON & GLICKSON, P.C., an Illinois | ) | **03C 1617** |
| Professional Corporation, GORDON & | ) | |
| GLICKSON, L.L.C., an Illinois Limited Liability | ) | MAGISTRATE JUDGE MASON |
| Corporation, and MARK L. GORDON, | ) | |
| SCOTT L. GLICKSON, PHILIP P. Mc GUIGAN, | ) | |
| DIANA J.P. McKENZIE, MICHAEL E.C. MOSS, | ) | |
| and STUART SMITH, | ) | |
| | ) | |
| *Defendants.* | ) | |

## COMPLAINT AT LAW

NOW COMES Plaintiff, RICHARD L. FOGEL, (hereinafter, "Fogel"), by and through his

attorneys MARK S. GROTEFELD and SHANTEL D. WOOD of GROTEFELD & DENENBERG,

L.L.C., and as his Complaint at Law against Defendants, GORDON & GLICKSON, P.C., an Illinois

Professional Corporation (hereinafter, "P.C."), GORDON & GLICKSON, L.L.C., an Illinois Limited

Liability Corporation (hereinafter, "L.L.C."), and MARK L. GORDON, SCOTT L. GLICKSON,

PHILIP P. McGUIGAN, DIANA J.P. McKENZIE, MICHAEL E.C. MOSS, and STUART SMITH,

(hereinafter, "Equity Holders"), states as follows:

### JURISDICTION

Jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332. Plaintiff

Fogel is a resident domiciled in New Mexico. Defendant Gordon & Glickson, P.C. is an Illinois

Professional Corporation with its principle place of business in Illinois. Defendant Gordon &

Glickson, L.L.C. is an Illinois Limited Liability Corporation with its principle place of business in

Illinois. Upon information and belief all Equity Holders are Illinois residents. The matter in controversy is in excess of $75,000.00, exclusive of interest and costs.

Subject matter jurisdiction exists in the United States District Court of the Northern District of Illinois, pursuant to 28 U.S.C. § 1332, as the events complained of occurred within the State of Illinois.

## GENERAL ALLEGATIONS

1.      The principal business of the P.C. is the practice of law and the Equity Holders possess 100% of the equity in the P.C. as shareholders.

2.      The principal business of the L.L.C. is the practice of law and, as of December 31, 1999, the Equity Holders and Fogel possessed 100% of the equity in the L.L.C. as its "Members."

3.      The Equity Holders are attorneys licensed to practice law in the State of Illinois.

4.      In March 1986 Fogel joined the P.C. as an associate attorney.

5.      In January 1991 Fogel became an "income partner" at the P.C.

6.      In January 1993 Fogel became an equity shareholder of the P.C. purchasing 2,500 shares for $2,500.00 pursuant to a written employment agreement (hereinafter the "Employee Agreement"), a copy of which is attached as Exhibit A.

7.      In 1997 and 1998, respectively, the P.C. created an "investment pool" for its equity shareholders comprised of stocks and stock options received or otherwise purchased from various corporate clients. The P.C. acquired the investment pool stocks and stock options in several ways, including outright purchase using P.C. funds that may have been otherwise distributed to the equity shareholders as additional compensation. Additionally, MARK L. GORDON, as nominee for the P.C., held certain stock options for benefit of the P.C.

2

8.      The 1997 and 1998 investment pools were assets of the P.C., subject to the claims of the P.C.'s general creditors.

9.      The equity shareholders of the P.C., including Fogel, each had an agreement with the firm entitling them to a payment of their share of each investment pool upon leaving the firm.

10.      The P.C. managed the 1997 and 1998 investment pools through an "Asset Management Committee" comprised of MARK L. GORDON, PHILIP P. McGUIGAN and MICHAEL E.C. MOSS. The Asset Management Committee handled all transactions on behalf of the firm with respect to the investment pools and periodically issued spreadsheet reports to the P.C.'s equity shareholders detailing the estimated current fair market value of investment pool assets and detailing each equity shareholder's interest in the respective investment pool corpus.

11.      On April 30, 1999 the firm reorganized its operations, assets and liabilities transferring general operations, assets and liabilities from the P.C. to the newly created L.L.C.

12.      At the time of reorganization the equity shareholders of the P.C., including Fogel, became the "Members" of the newly created L.L.C.

13.      The same individuals that comprised the P.C.'s "Asset Management Committee" became the members of the L.L.C.'s "Investment Committee" for purposes of managing the L.L.C.'s investment pool assets. Their duties and responsibilities as members of the newly formed L.L.C. Investment Committee were identical to those of the P.C.'s Asset Management Committee.

14.      In connection with the reorganization, in 1999 certain stock and stock options of the P.C.'s 1997 and 1998 investment pool corpus were transferred from the P.C. to the L.L.C. (hereinafter referred to as the L.L.C.'s "initial investments") while certain stocks and stock options remained in the 1997 investment pool of the P.C. The initial investments and the investments

3

received by the L.L.C. in 1999 were all accounted for by the L.L.C. in separate 1997, 1998 and 1999 investment pools in the same manner that had been previously utilized by the P.C.

15.     At the time of reorganization it was determined by the "Asset Management Committee/Investment Committee" members that certain cash and securities were not to be transferred from the P.C. to the L.L.C., but were to remain in the P.C. to satisfy select current and future obligations of the firm.

16.     At its inception, the L.L.C. formed a "Management Committee" comprised of individual members MARK L. GORDON, MICHAEL E. C. MOSS, PHILIP P. McGUIGAN AND DIANA J.P. McKENZIE. The firm's L.L.C.'s Management Committee's makeup, duties and responsibilities were substantially the same as the P.C.'s Management Committee.

17.     On September 27, 1999 Fogel provided written notice of withdrawal from the L.L.C., to be effective December 31, 1999 (attached as Exhibit B).

18.     On December 15, 1999 Fogel provided an amended written notice of withdrawal to be effective January 14, 2000 (attached as Exhibit C). Fogel ceased practicing law as a member of the firm as of January 14, 2000.

19.     At the time of Fogel's withdrawal from the firm in January 2000, his pro rata ownership interests in the combined investment pool assets was determined by the firm to be $462,570.87.

20.     In March 2000 the P.C.'s Asset Management Committee and/or L.L.C.'s Investment Committee converted to cash certain stocks and stock options maintained in the P.C.'s 1997 investment pool.  The conversion of the corpus of the 1997 P.C. investment pool to cash, in an amount in excess of one million dollars ($1,000,000.00), was then distributed by the Management

4

Committee to the Equity Holders only, knowingly leaving the P.C.'s 1997 and 1998 investment pools with insufficient assets to meet known existing debt obligations to Fogel.

21.     At the time of the distribution of the corpus of the P.C.'s 1997 investment pool to the Equity Holders, Fogel was known by the Equity Holders to be the sole creditor of the P.C.

22.     At no time before, or concurrent with, the firm's distribution of the corpus of the P.C.'s 1997 investment pool to the Equity Holders was Fogel provided notice that after such distribution there would be insufficient assets in the P.C. to satisfy the firm's acknowledged debt to Fogel.

23.     In December of 2000 both the P.C. and L.L.C. informed Fogel that all existing firm debt obligations to Fogel would be satisfied.

24.     On or about January 9, 2002 Fogel received a letter from Maureen T. Feltman, firm administrator for the P.C. and L.L.C., indicating that there remained insufficient assets in the P.C. to satisfy existing debt obligations to Fogel (attached as Exhibit D).

25.     As of December 31, 2002 the collective investment pool assets owed to Fogel were $290,669.19, including assets of $252,957.76 from the 1997 investment pool.

### COUNT I - FRAUD
### (All Defendants)

26.     Plaintiff incorporates by reference the allegations contained in paragraphs 1-25 as though fully set forth in this Count I.

27.     The P.C. and L.L.C., through their respective authorized agents, and the Equity Holders collectively and individually, conveyed false statements of material fact and/or failed to convey material facts to Fogel to induce Fogel to forego taking timely action to obtain owed

5

investment pool assets, when they knew that by so doing the corpus of the P.C.'s 1997 investment pool was depleted, or would be depleted, so that Fogel's known deferred asset distributions could not be satisfied.

28.     Fogel reasonably relied upon the Defendants' statements regarding the ability of the assets contained in the firm's investment pools (a portion of which was Fogel's) to satisfy the debt owed to him, and further relied upon Defendants' assurances that the corpus of the investment pool would be maintained in a manner so as to satisfy the recognized amounts owed to him.

29.     Fogel, as a result of his reliance on the false statements of Defendants, was damaged in that he did not receive amounts owed to him directly from assets contained in the P.C.'s 1997 investment pool.

WHEREFORE, RICHARD L. FOGEL, requests judgment be entered in his favor and against Defendants, GORDON & GLICKSON, P.C., GORDON & GLICKSON, L.L.C., MARK L. GORDON, SCOTT L. GLICKSON, PHILIP P. McGUIGAN, DIANA J.P. McKENZIE, MICHAEL E.C. MOSS, and STUART SMITH, in an amount in excess of $75,000.00, plus costs and for such other or further relief as this Court deems equitable and just.

## COUNT II - CONVERSION
**(Equity Holders)**

30.     Plaintiff incorporates by reference the allegations contained in paragraphs 1-25 as though fully set forth in this Count II.

6

31.    The Equity Holders assumed unauthorized and wrongful control, dominion, and/or ownership of Fogel's assets from the P.C.'s 1997 investment pool when they collectively depleted investment pool assets in excess of $1,000,000.00, thereby leaving insufficient assets remaining in the investment pool to meet known obligations to pay Fogel.

32.    Fogel had a right to his pro rata portion of the assets contained in the investment pools by virtue of his employment and deferred compensation agreements with the P.C. and the L.L.C.

33.    Upon providing his notice of withdrawal from the L.L.C., in January of 2000, Fogel had immediate, absolute and unconditional ownership rights to his share of the then existing assets of the firm's investment pools.

34.    Upon cessation of payment of amounts owed from the 1997 investment pool, Fogel demanded of the Defendants his rights in the remaining $252,957.76 still owed to him from the 1997 investment pool. Said demand has not been satisfied by any Equity Holder.

WHEREFORE, RICHARD L. FOGEL, requests judgment be entered in his favor and against Defendants, MARK L. GORDON, SCOTT L. GLICKSON, PHILIP P. McGUIGAN, DIANA J.P. McKENZIE, MICHAEL E.C. MOSS, and STUART SMITH, in an amount in excess of $75,000.00, plus costs and for such other or further relief as this Court deems equitable and just.

Respectfully Submitted,
RICHARD L. FOGEL,

By: _____
One of His Attorneys

Mark S. Grotefeld
Shantel D. Wood
GROTEFELD & DENENBERG, L.L.C.
105 West Adams Street, Suite 2300
Chicago, IL 60603
(312) 551-0200

7

## EMPLOYMENT AGREEMENT

THIS AGREEMENT ("Agreement" herein) is made as of the 1st day of January, 1993 between GORDON & GLICKSON P.C., an Illinois professional corporation ("Company" herein) and RICHARD L. FOGEL ("FOGEL" herein), with reference to the following facts:

A.   FOGEL has been employed by the Company as an attorney, which position involves the practice of law and executive, managerial and operational responsibilities.

B.   The experience of FOGEL makes him valuable to the Company as he has practiced law and managed his responsibilities in a capable and efficient manner which has led to substantial gains to the Company.

C.   The Company desires to continue to retain the services of FOGEL and, accordingly, FOGEL and the Company wish to reflect certain agreements regarding their relationship.

1.   <u>Employment</u>.

1.1  For the term (as hereinafter defined) and upon the conditions hereinafter set forth, Company hereby employs FOGEL as an attorney and an Executive Employee of Company, and FOGEL hereby accepts such employment upon the terms and conditions hereinafter set forth and shall perform such duties as the Board of Directors of Company shall, from time to time, direct.   As used herein, "Executive Employee" means any active or inactive employee of the Company who is or was an officer of the Company during any part of his or her employment.

1.2  FOGEL shall hold the position of Vice-President and serve as a director of Company, and FOGEL agrees to serve in those capacities at the pleasure of the Board of Directors and Shareholders, respectively.

1.3  FOGEL shall devote his full productive time (except for such vacation periods as are hereinafter provided for), energy and abilities to the proper and efficient management of the Company in order to promote the best interests and welfare of the Company and its clients.  However, nothing contained herein shall prevent FOGEL from engaging in activities of a personal nature, or investing in any form of investment for his own benefit, provided such activities do not interfere with FOGEL's services to be rendered hereunder.

2.   <u>Term of Employment</u>.

FOGEL's term of employment under this Agreement ("Term" herein) shall be deemed to have commenced as of March 3, 1986 (which includes certain credit for prior service or its equivalent)



EXHIBIT

"A"

and shall continue until terminated in accordance with the provisions of this Agreement.

3. <u>Compensation</u>.

3.1 As consideration for FOGEL's services under this Agreement, Company shall pay FOGEL as compensation during each fiscal year of the Company ("fiscal year" herein), throughout the Term of this Agreement in an amount equal to that determined by the Board of Directors of the Company at the beginning of each fiscal year to be paid in a manner (but not necessarily in an amount) consistent with the method of payment of compensation to other Executive Employees of the Company as such method has been adopted by the Board of Directors. In the event the Term shall end on other than the last day of the fiscal year, compensation shall be determined for the period commencing with the first day of the fiscal year in which the Term ends and ending with the last day of the Term.

3.2 FOGEL shall also be reimbursed during the Term of this Agreement for all reasonable and necessary out-of-pocket expenses incurred by him in connection with the performance of his duties under this Agreement, provided that the Board of Directors of the Company has adopted a policy providing for such reimbursement of expenses.

3.3 "Accumulation Account" distributions shall not be deemed "compensation" for any purpose under this Agreement and is only payable at the discretion of the Board of Directors and shall not be deemed earned pro-rata or on any other predetermined basis.

4. <u>Vacation</u>.

For the Term of this Agreement, FOGEL shall be entitled to a vacation of no less than three weeks (or such greater amounts of time as may be permitted by the Board of Directors) for each fiscal year; provided, however, vacation cannot be accrued from year to year and any vacation not taken in any given year will be deemed forfeited. During such vacation periods, FOGEL's compensation set forth above shall be paid in full.

5. <u>Retirement and Disability</u>.

5.1 FOGEL shall be compelled to retire on June 11, 2027, provided, however, that FOGEL shall be allowed to voluntarily retire at any time after June 11, 2022, upon giving four (4) months written notice to the Company of his intention to do so. Upon any such retirement, FOGEL's employment with the Company shall be deemed terminated.

5.2 The Company shall maintain disability insurance coverage policies (the "Disability Policies") for FOGEL (if, and

only if, FOGEL is insurable and the rates are acceptable to the Company) and if by reason of illness or any disability, physical or mental (as determined under the Disability Policies and referred to herein as "Disability"), FOGEL is unable to carry on his duties on behalf of the Company during the Term, the Company will provide assistance to insure that any and all Disability benefits under said policies are made available and paid directly to FOGEL; provided, however, the Company shall pay to FOGEL any amounts necessary so that during such Disability FOGEL will receive no less than (a) full compensation as provided by subparagraph 3.1 above for the first (6) months of the Disability, (b) no less than seventy-five percent (75%) of such compensation for the next six (6) months of the Disability; and (c) no less than fifty percent (50%) of such compensation for the next six (6) months of the Disability. Should FOGEL's Disability continue through these six (6) months periods, the Company shall then have the right to compel FOGEL to retire effective upon the exercise of said right and, in such event, his employment with the Company shall be deemed terminated; provided any remaining benefits of the Disability Policies shall continue to belong to FOGEL.

      6.   <u>Withdrawal and Other Termination</u>.

      6.1  FOGEL may terminate his employment with the Company at the end of any fiscal year ("Withdrawal" herein) by giving three (3) months' written notice to the Company prior to the end of such fiscal year of his intention so to do.

      6.2  Company may terminate FOGEL's employment with the Company upon sixty (60) days written notice for any reason whatsoever; provided, however, the Company's decision to so terminate FOGEL's employment must either be based upon an affirmative vote of a majority of the Board of Directors or a two-thirds vote of the shareholders of the Company.

      6.3  Upon notice being given either pursuant to subparagraphs 6.1 or 6.2 hereof, Company shall have the right to require FOGEL to vacate his office and Company's facilities at any time it wishes after such notice has been given; provided, however, the exercise of this right shall not limit FOGEL's rights to due and unpaid compensation.

      7.   <u>Arbitration</u>.

      If any dispute arises between FOGEL, a recipient or his beneficiaries, on the one hand, and Company, on the other hand, as to any sums due FOGEL under this Agreement, and such dispute cannot be resolved between the parties, at the written request of either party the dispute shall be referred to an arbitrator mutually agreeable to both parties, and in the absence of such agreement, to arbitration under the rules of the American Arbitration Association. The arbitrator shall be selected no later than thirty

-3-

(30) days following the written request therefor. The fee of the arbitrator shall be paid entirely by the party whose position is not upheld by the arbitrator; provided, however, that in the event the arbitrator finds that the sum due FOGEL exceeds the amount offered by the Company prior to the arbitration hearing by more than FIVE HUNDRED DOLLARS ($500.00), the entire fee of the arbitrator shall be borne by Company, but if the amount found due exceeds the amount offered by less than FIVE HUNDRED DOLLARS ($500.00), the fee of the arbitrator shall be shared equally by both parties. No other joint expenses shall be incurred except by mutual written agreement of both parties to the dispute. The award of the arbitrator shall be final and binding on both parties. The arbitrator shall have no power to alter, add to or subtract from the terms of this Agreement, and the arbitrator's decision shall be based wholly on the evidence and arguments presented to him by the parties in the presence of each other.

       8.   <u>Notices</u>.

     Any and all notices, demands or other communications required or desired to be given hereunder by any party shall be in writing and shall be validly given or made to another party if served either personally or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested. If such notice, demand or other communication be served personally, service shall be conclusively deemed made at the time of such personal service. If such notice, demand or other communication be given by mail, such shall be conclusively deemed given forty-eight (48) hours after the deposit thereof in the United States mail addressed to the party to whom said notice, demand or other communication is to be given as hereinafter set forth:

        To Company:          444 N. Michigan Avenue
                                  36th Floor
                                  Chicago, Illinois  60611

        To FOGEL:            175 N. Harbor Drive, #5504
                                  Chicago, Illinois 60601

Any party hereto may change its address for the purpose of receiving notices, demands and other communications as herein provided by a written notice given in the manner aforesaid to the other party or parties hereto.

       9.   <u>Applicable Law and Severability</u>.

     This document shall, in all respects, be governed by the laws of the State of Illinois applicable to agreements executed and to be wholly performed within the State of Illinois. Nothing contained herein shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision contained herein and any present or future

-4-

statute, law, ordinance or regulation contrary to which the parties have no legal right to contract, the latter shall prevail but the provision of this document which is affected shall be curtailed and limited only to the extent necessary to bring it within the requirements of the law.

10. Further Assurances.

Each of the parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of the parties hereto.

11. Attorneys' Fees.

Without in any way limiting the provisions of Paragraph 7 hereof, in the event any action be instituted by a party to enforce any of the terms and provisions contained herein, the prevailing party in such action shall be entitled to such reasonable attorneys' fees, costs and expenses as may be fixed by the Court.

12. Modifications or Amendments.

No amendment, change or modification of this document shall be valid unless in writing and signed by all of the parties hereto.

13. Successors and Assigns.

All of the terms and provisions contained herein shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, personal representatives, successors and assigns.

14. Entire Agreement.

This document constitutes the entire understanding and agreement of the parties with respect to the matters contained herein and any and all prior agreements, understandings or representations are hereby terminated and canceled in their entirety and are of no further force or effect.

15. Captions.

The captions appearing at the commencement of the paragraphs hereof are descriptive only and for convenience in reference. Should there be any conflict between any such caption and the paragraph at the head of which it appears, the paragraph and not such caption shall control and govern in the construction of this documents.

-5-

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first hereinabove set forth.

GORDON & GLICKSON P.C.

By: _____
                              "Company"

ATTEST:

By: _____
      Secretary

_____
RICHARD L. FOGEL

-6-



**GORDON & GLICKSON**

GORDON & GLICKSON
LLC
444 N. MICHIGAN AVE.
SUITE 3600
CHICAGO, IL 60611-
3903

September 27, 1999

WRITER'S DIRECT DIAL
312.321.7662
WRITER'S DIRECT E-MIL
RLFOGEL@GGTECH.COM

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Gordon & Glickson LLC
Management Committee
Mr. Mark L. Gordon, Chairman
444 North Michigan Avenue
Suite 3600
Chicago, Illinois 60611

Re:     Notice of Withdrawal

Dear Mark,

During the last fourteen years, I have dedicated my career to building Gordon & Glickson into a leader in providing legal services to the information technology market. I have been successful in transforming both my career and our practice, and am grateful for the opportunity to have worked with you, my partners, the firm's clients, and others along the way. It is now time for me to move in a new direction. At this point in my career I have made a decision to focus my creative talents on expanding Motivity Incorporated, the business my wife founded several years ago.

Accordingly, to confirm our conversation on Sunday September 26, 1999, and pursuant to the Gordon & Glickson LLC Operating Agreement dated April 30, 1999 ("Operating Agreement"), and the terms of my Employment Agreement dated January 1, 1993 ("Employment Agreement"), and any other firm agreements to which I am subject, I hereby provide advance notice of my withdrawal from the firm, effective at the close of business on December 31, 1999, in accordance with the terms of the Operating Agreement and Employment Agreement.

Prior to the effective date of my withdrawal, I wish to use certain accrued but unused vacation time that I have earned. I am currently scheduled to take these vacation days from December 27 through December 31, inclusive. This year-end vacation has been scheduled for some months now and was scheduled during the same period that I scheduled my vacation last year. I will, of course, continue to fully perform my obligations to the firm through my effective date of withdrawal and do what is necessary with respect to the transition of my firm duties to others designated by the firm's Management Committee. To the extent that my continuing involvement in transition matters is needed beyond December 31, 1999, I will continue to cooperate.

**EXHIBIT**

"B"

Mr. Mark L. Gordon, Chairman
September 27, 1999
Page 2

I know that there are many matters that we will discuss in the coming months with respect to my transition, year-end distributions, and liquidation of my Member's interest, Investment Pool Payout, and Additional Amount (as defined in the Operating Agreement), and I believe that such matters are best handled in personal discussions among long-time partners rather than in this formal notice of withdrawal. I look forward to our transition discussions.

Sincerely,

Richard L. Fogel

---

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *Return Receipt Requested* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

| | |
|---|---|
| 3. Article Addressed to: Mark Gordon Gordon + Glickson LLC 444 N. Michigan Ave Suite 3600 Chicago, IL 60611 | 4a. Article Number |
| | 4b. Service Type |
| | ☐ Registered ☑ Certified |
| | ☐ Express Mail ☐ Insured |
| | ☐ Return Receipt for Merchandise ☐ COD |
| | 7. Date of Delivery 09/27 |

5. Received By: (Print Name) TILLMAN

Signature (Addressee or Agent)

8. Addressee's Address (Only if requested and fee is paid)

Form 3811, December 1994

P 326 764 258

---

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

Sent to: Gordon + Glickson

Street & Number: Michigan St 3600

Post Office, State, & ZIP Code: Chicago, IL 60601133

| | |
|---|---|
| Postage | $ 1.40 |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | 1.25 |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ 2.98 |

Postmark or Date
Clerk: KW81JH
09/27/99

---

**UNITED STATES POSTAL SERVICE**

***** WELCOME TO *****
AMOCO FINANCE STATION PO
CHICAGO, IL 60601-9998
09/27/99 01:33PM

Store USPS        Trans    63
Wkstn sys5004     Cashier  KW81JH
Cashier's Name    JOAN
Stock Unit Id     WINJOANIE
PO Phone Number   312-861-1210

1. First Class                    2.98
   Destination:     60611
   Weight:          0.80oz
   Postage Type:    PVI
   Total Cost:      2.98
   Base Rate:       0.33
        SERVICES
   Certified Mail   1.40
   Return Receipt   1.25

Subtotal                          2.98
Total                             2.98

RICHARD L. FOGEL
175 NORTH HARBOR DRIVE
APARTMENT 5504
CHICAGO, ILLINOIS 60601
312.616.1317

**US Postal Service**
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail *(See reverse)*

Z 174 566 994

| | |
|---|---|
| Sent to | MARK GORDON GORDON GLICKSON |
| Street & Number | 444 N MICHIGAN AVE #3600 |
| Post Office, State, & ZIP Code | CHICAGO IL 60611 |
| Postage | $ |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ |
| Postmark or Date | DEC 17 1999 |

PS Form **3800**, April 1995

December 15, 1999

Gordon & Glickson LLC
Management Committee
Mark Gordon, Chairman
444 North Michigan Avenue, Suite 3600
Chicago, Illinois 60611

Dear Mark,

After further reviewing my situation and the firm's agreements, I am amending my date of withdrawal from December 31, 1999 to the close of business on January 14, 2000. As indicated in my previous letter dated September 27, 1999, I will continue to perform my obligations to the firm through my effective date of withdrawal (i.e., January 14, 2000), and will continue to help with any transition issues.

Sincerely,

Richard L. Fogel

Received:

_____
Mark L. Gordon

_____
Date

**SENDER:**
■ Complete items 1 and/or 2 for additional services.
■ Complete items 3, 4a, and 4b.
■ Print your name and address on the reverse of this form so that we can return this card to you.
■ Attach this form to the front of the mailpiece, or on the back if space does not permit.
■ Write *"Return Receipt Requested"* on the mailpiece below the article number.
■ The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

3. Article Addressed to:

MARK L. GORDON
GORDON + GLICKSON
444 N. MICHIGAN AVE, SUITE 3600
CHICAGO IL 60611

| 4a. Article Number | Z174 566 994 |
|---|---|
| 4b. Service Type | |
| ☐ Registered | ☒ Certified |
| ☐ Express Mail | ☐ Insured |
| ☐ Return Receipt for Merchandise | ☐ COD |
| 7. Date of Delivery | 12/22/99 |

5. Received By: *(Print Name)*

6. Signature *(Addressee or Agent)*

8. Addressee's Address *(Only if requested and fee is paid)*

PS Form **3811**, December 1994          102595-99-B-0223          Domestic Return Receipt

**EXHIBIT**

"C"

# GORDON & GLICKSON P.C.

A Professional Corporation • Attorneys at Law

CHICAGO
444 NORTH MICHIGAN AVENUE
SUITE 3600
CHICAGO, ILLINOIS 60611-3903
TELEPHONE: 312 321-1700
FAX: 312 321-9324

WRITER'S DIRECT DIAL

(312) 321-7669
WRITER'S DIRECT INTERNET

mtfeltman@ggtech.com

January 9, 2002

VIA FEDEX
Mr. Richard L. Fogel
3 East Sunrise Drive
Santa Fe, NM 87501

Dear Rich:

Enclosed is a check from Gordon & Glickson P.C. made payable to you in the amount of $9,780.44. In accordance with all prior payments, the appropriate deductions have been made. This represents interest due through December 31, 2001, and a final principle payment. The P.C. no longer has any funds or assets except for a small reserve fund, which is being maintained for its expenses. This payment is being made, of course, subject to all of our prior correspondence to you with respect to these matters. We apologize for the short delay in forwarding this to you, which was related exclusively to finalizing year-end activities and travel schedules.

Very truly yours,

GORDON & GLICKSON P.C.

Maureen T. Feltman

/mtf
Enclosure

cc:    Mr. Michael E.C. Moss

**EXHIBIT**

"D"

PLEASE REPLY TO CHICAGO OFFICE
INTERNET gg@ggtech.com
www.ggtech.com



# Earnings Statement

GORDON & GLICKSON, P.C.
444 N. MICHIGAN AVE, SUITE 3600
CHICAGO, IL 60611

Period Ending: 12/31/2001

Pay Date: 12/31/2001

Social Security Number: 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
Taxable Marital Status: Married
Exemptions/Allowances:
Federal: 7
IL: 7

RICHARD L FOGEL
3 EAST SUNRISE
SANTA FE NM 87501

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Rich | | | 12,530.32 | 120,870.18 |
| Gross Pay | | | $12,530.32 | 120,870.18 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -2,408.97 | 23,152.08 |
| | IL State Income Tax | -340.91 | 3,276.11 |
| Net Pay | | $9,780.44 | |

Your federal taxable wages this period are
$12,530.32

---

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

GORDON & GLICKSON, P.C.
444 N. MICHIGAN AVE, SUITE 3600
CHICAGO, IL 60611

Payroll check number: 0000003244
Pay date: 12/31/2001

Pay to the order of: RICHARD L FOGEL

This amount: NINE THOUSAND SEVEN HUNDRED EIGHTY AND 44/100 DOLLARS     $9780.44

LASALLE NATIONAL BANK
CHICAGO, IL

⑈000032244⑈ ⑆071000505⑆ 21 0604 5⑈

| | | | | |
|---|---|---|---|---|
| **Original Amount** | 349,436.64 | | | |
| 6-13-01 Payment | | -29119.72 | | |
| 6-30-01 Payment | | -29119.72 | | |
| 9-30-01 Payment | | -29119.72 | | |
| **Balance** | | **262,077.48** | | |
| less 12-31-01 Payment | | -9119.72 | | |
| **12-31-01 Balance** | | **252,957.76** | | |

| Year 2001 | Rates | Days | Annual | Interest Due |
|---|---|---|---|---|
| 10-1-01 to 10-3-01 | 0.0600 | 3 | 15,724.65 | 129.24 |
| 10-4-01 to 11-6-01 | 0.0550 | 34 | 14,414.26 | 1,342.70 |
| 11-7-01 to 12-11-01 | 0.0500 | 35 | 13,103.87 | 1,256.54 |
| 12-12-01 to 12-31-01 | 0.0475 | 20 | 12,448.68 | 682.12 |
| Total | | 92 | | 3,410.60 |

| | |
|---|---|
| Principal | 9,119.72 |
| Interst | 3,410.60 |
| **Total** | **12,530.32** |

*less withholdings*

JS 44
(Rev. 11/95)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as require by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Richard L. Fogel

**DEFENDANTS** Gordon & Glickson, P.C. Gordon & Glickson, L.L.C., Mark L. Gordon, Scott L. Glickson, Philip P. McGuigan, Diana J.P. McKenzie, Michael E.C. Moss, and Stuart Smith

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF

(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT

(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Mark S. Grotefeld & Shantel D. Wood
Grotefeld & Denenberg, LLC
105 W. Adams St., Ste. 2300
Chicago, IL 60603    (312) 551-0200

ATTORNEYS (IF KNOWN)

JUDGE JOAN H. LEFKOW

DOCKETED
MAR 0 6 200

**03C   1617**

MAGISTRATE JUDGE MASON

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF (For Diversity Cases Only) AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

Appeal to District Judge from ☐ 7 Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | | | |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | PERSONAL PROPERTY | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☒ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | LABOR | SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Pursuant to 28 U.S.C. Section 1332 Plaintiff seeks recovery of personality base upon common law fraud and conversion of personality by Defendants.

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23

DEMAND $ 252,957.76

CHECK YES only if demanded in complaint: JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE                    DOCKET NUMBER

DATE
March 5, 2003

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

Richard L. Fogel

     v.

Gordon & Glickson, P.C., Gordon &
Glickson, L.L.C., Mark L. Gordon,
Scott L. Glickson, Philip P. McGuigan,
Diana J.P. McKenzie, Michael E.C. Moss,
and Stuart Smith

JUDGE JOAN H. LEFKOW



Case Number: 03C 1617

MAGISTRATE JUDGE MASON

**DOCKETED MAR 0 6 2003**

**APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:**

    Richard L. Fogel

| (A) | (B) |
|---|---|
| **SIGNATURE** *Mark Grotefeld* | **SIGNATURE** *Shantel D. Wood* |
| **NAME** Mark S. Grotefeld | **NAME** Shantel D. Wood |
| **FIRM** Grotefeld & Denenberg, LLC | **FIRM** Grotefeld & Denenberg, LLC |
| **STREET ADDRESS** 105 W. Adams St., Ste. 2300 | **STREET ADDRESS** 105 W. Adams St., Ste. 2300 |
| **CITY/STATE/ZIP** Chicago, IL 60603 | **CITY/STATE/ZIP** Chicago, IL 60603 |
| **TELEPHONE NUMBER** (312) 551-0200 | **TELEPHONE NUMBER** (312) 551-0200 |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** 6180729 | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** 06276197 |
| **MEMBER OF TRIAL BAR?** YES ☒ NO ☐ | **MEMBER OF TRIAL BAR?** YES ☐ NO ☒ |
| **TRIAL ATTORNEY?** YES ☒ NO ☐ | **TRIAL ATTORNEY?** YES ☒ NO ☐ |
| | **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☒ |
| **(C)** | **(D)** |
| **SIGNATURE** | **SIGNATURE** |
| **NAME** | **NAME** |
| **FIRM** | **FIRM** |
| **STREET ADDRESS** | **STREET ADDRESS** |
| **CITY/STATE/ZIP** | **CITY/STATE/ZIP** |
| **TELEPHONE NUMBER** | **TELEPHONE NUMBER** |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** |
| **MEMBER OF TRIAL BAR?** YES ☐ NO ☐ | **MEMBER OF TRIAL BAR?** YES ☐ NO ☐ |
| **TRIAL ATTORNEY?** YES ☐ NO ☐ | **TRIAL ATTORNEY?** YES ☐ NO ☐ |
| **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ | **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ |

**PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.**