# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1617 | **DATE** | 9/3/2003 |
| **CASE TITLE** | Fogel vs. Gordon & Glickson, P.C., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to dismiss [6-1] is granted. Plaintiff's complaint is dismissed without prejudice and with leave to replead. Plaintiff has until 10/10/03 to file a second amended complaint. If he fails to do so, the Court will dismiss his lawsuit with prejudice. Plaintiff is given until 12/9/03 to effect service of process under Rule 4.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 05 2003 date docketed | 11 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 03 SEP -4 PM 4:45 | 9/4/2003 date mailed notice | |
| MD | courtroom deputy's initials | FILED FOR DOCKETING 7-03 | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
SEP 0 5 2003

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARD L. FOGEL,

    Plaintiff,

v.

No. 03 C 1617
Judge Joan H. Lefkow

GORDON & GLICKSON, P.C., GORDON & GLICKSON, L.L.C., MARK L. GORDON, SCOTT L. GLICKSON, PHILIP P. McGUIGAN, DIANA J.P. McKENZIE, MICHAEL E.C. MOSS, and STUART SMITH,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard L. Fogel ("Fogel") has filed a two-count first amended complaint against defendants Gordon & Glickson, P.C., Gordon & Glickson, L.L.C., Mark L. Gordon, Scott L. Glickson, Philip P. McGuigan, Diana J.P. McKenzie, Michael E.C. Moss and Stuart Smith. Plaintiff alleges defendants are liable for fraud and conversion under Illinois law. Defendants have moved to dismiss the first amended complaint based on plaintiff's failure to plead fraud under Federal Rules of Civil Procedure 9 and 12(b)(6) and failure to state a claim for conversion under Rule 12(b)(6). Additionally, defendants have moved to dismiss the lawsuit for insufficiency of service of process under Rules 4 and 12(b)(5). The court has diversity jurisdiction under 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the

parties[1] and the amount in controversy exceeds $75,000. For the reasons set forth below, the motion is granted.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke* v. *City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

## ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

The facts, taken as true from plaintiff's first amended complaint, are as follows: In March 1986, plaintiff joined the law firm Gordon & Glickson, P.C. (the "P.C.") as an associate attorney. In January 1991, he became an income partner. In January 1993, he became an equity

---

[1] Fogel alleges he is a citizen of New Mexico. As for defendants, he alleges that Gordon & Glickson, L.L.C. is a limited liability corporation. "[T]he citizenship of an L.L.C. for purposes of diversity jurisdiction is the citizenship of its own members." *Cosgrove* v. *Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). Although Fogel alleges he was a member of Gordon & Glickson, L.L.C., he alleges that he subsequently withdrew from it. Further, he alleges that the individual defendants are members of Gordon & Glickson, L.L.C. and that they are citizens of Illinois. Thus, Gordon & Glickson, L.L.C. is a citizen of Illinois. Finally, Fogel alleges that Gordon & Glickson, P.C. is a professional corporation that is incorporated and has its principal place of business in Illinois. The citizenship of a professional corporation is its state of incorporation and principal place of business. *Cote* v. *Wadel*, 796 F.2d 981, 983 (7th Cir. 1986). Thus, Gordon & Glickson, P.C. is a citizen of Illinois.

shareholder. Because of this new position, plaintiff had to purchase 2,500 shares in the P.C. for $2,500 pursuant to a written employment agreement.

In 1997 and 1998, the P.C. created "investment pools" for its equity shareholders. The investment pools consisted of stocks and stock options received or otherwise purchased from various corporate clients. To purchase these stocks and stock options, the P.C. used funds that it otherwise could have distributed to the equity shareholders. Because the investment pools were assets of the P.C., they were subject to the claims of the P.C.'s general creditors. But the equity shareholders also had an agreement with the P.C. that entitled them to payment of their share in the investment pools on departure from the law firm.[2]

The investment pools were managed through a committee comprised of defendants Gordon, McGuigan and Moss. Further, Gordon, as nominee for the P.C., held stock options for the benefit of the P.C. The committee handled all transactions for the P.C. with respect to the investment pools and periodically issued reports about these pools to the P.C.'s equity shareholders. Further, the reports detailed the estimated current fair market value of the pools' assets and each equity shareholder's interest in the pools.

---

[2]In reference to this allegation, defendants submit the law firm's "Deferred Compensation Plan And Agreement." If matters outside of the pleadings are included in a Rule 12(b)(6) motion, they must be either expressly rejected, or the motion must be converted into a motion for summary judgment. *See Travel All Over The World, Inc.* v. *Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996). Nevertheless, any exhibits attached to the complaint as well as documents attached to a motion to dismiss that are referred to in a complaint and are central to the plaintiff's claims are considered part of the pleadings. *See Wright* v. *Assoc. Ins. Co.*, 29 F.3d 1244, 1248 (7th Cir. 1994), citing *Venture Assoc.* v. *Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993).

Defendants assert that the court properly may consider this agreement because of plaintiff's reference to it in his first amended complaint. Plaintiff, however, contends that defendants improperly create factual disputes in their motion to dismiss although it is unclear whether plaintiff refers to defendants' reliance on the attached agreement. For the purpose of this motion, the court relies only on the allegations in the first amended complaint and disregards the agreement attached to defendants' motion to dismiss.

On April 30, 1999, the P.C. re-organized and transferred general operations, assets and liabilities to Gordon & Glickson, L.L.C. (the "L.L.C."). At this time, the equity shareholders of the P.C. became members of the L.L.C. Further, the members of the P.C.'s investment committee became members of the L.L.C.'s investment committee and performed the same duties as before.

In 1999, certain stocks and stock options of the P.C.'s investment pools (the "initial investments") were transferred to the L.L.C. The L.L.C. accounted for these initial investments in the same way as the P.C. Certain stocks and stock options, however, remained in the P.C.'s 1997 investment pool. This was done because the investment committee determined that certain cash and securities should remain in the P.C. to satisfy current and future firm obligations.

On December 15, 1999, Fogel voluntarily resigned his position with the law firm and provided a notice of withdrawal from the L.L.C. to be effective January 14, 2000. As of that date, the law firm determined that his pro rata ownership interest in the investment pools was $462,570.87.

In March 2000, the P.C.'s management committee and/or the L.L.C.'s investment committee converted certain stocks and stock options that had been maintained in the 1997 investment pool into cash. This conversion resulted in approximately $1 million, which the management committee distributed to the equity shareholders. Because plaintiff no longer was an equity shareholder, he was not included in this distribution.

Further, this conversion left the investment pools with insufficient funds to meet the payment due to plaintiff, the "sole creditor of the P.C." (First Am. Compl. ¶ 21.) The remaining

equity shareholders knew, but did not inform plaintiff, that there would be insufficient funds to satisfy the law firm's "debt" to him. (*Id.* ¶ 22.)

Indeed, as late as December 2000, the law firm informed plaintiff it would satisfy all existing obligations to him. Around January 9, 2002, however, plaintiff received a letter from Maureen T. Feltman, the administrator for the law firm, stating that there were insufficient assets in the P.C. to satisfy the law firm's obligations to plaintiff. As of December 31, 2002, defendants owed Fogel $290,669.19, including $252,957.76 from the 1997 investment pool. On or about March 5, 2003, plaintiff filed this instant lawsuit against defendants.

## DISCUSSION

### A. Fraud

Defendants argue that plaintiff fails to plead his fraud claim with particularity under Rule 9(b). In addition to the mandates of Rule 12(b)(6), Rule 9(b) requires "all averments of fraud" to be "stated with particularity," although "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). The rule requires "the plaintiff to state 'the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni\*quality, Inc.* v. *Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)(quoting *Bankers Trust Co.* v. *Old World Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)); *see also DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("Although states of mind may be pleaded generally [under Rule 9(b)], the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story.").

As to the who, what, when, where, and how, plaintiff pleads the "what" and "when" where he avers that the law firm informed him in December 2000 that it had sufficient funds to fulfill its obligations to him. Plaintiff, however, fails to plead the "who," "where" and "how" with the requisite specificity required under Rule 9(b). Neither does he does plead the identity of the party that conveyed the false information or how each defendant participated in the fraud. *See Vicom Inc.* v. *Harbridge Merchant Servs., Inc.,* , 20 F.3d 771, 778 (7th Cir. 1994) (In the case of multiple defendants, Rule 9(b) requires the plaintiff to "inform each defendant of the nature of his alleged participation in the fraud.") (internal citations and quotations omitted). In addition, he does not plead how the party conveyed this information (i.e., the method of communication). For these reasons, plaintiff fails to plead fraud with particularity under Rule 9(b). Accordingly, the court will dismiss plaintiff's fraud claim without prejudice and with leave to re-plead.[3]

**B.  Conversion**

To state a claim for conversion under Illinois law, the plaintiff must show (1) a tortious conversion of the chattel; (2) a right to property in it; and (3) a right to immediate possession of the chattel that is absolute. *In re Thebus*, 108 Ill.2d 255, 260, 483 N.E.2d 1258, 1260 (1985). Defendants argue that plaintiff's claim merely concerns defendants' obligation to pay money to him and thus plaintiff's conversion claim must fail as a matter of law. In support of this

---

[3]Because the court will dismiss plaintiff's fraud claim on this ground, it need not address defendants' additional argument that plaintiff fails to plead the elements of common law fraud under Illinois law. It, however, reminds plaintiff that if he re-pleads his fraud claim he must, at a minimum, allege all the elements of fraud. To state a claim for common law fraud, plaintiff must allege (1) defendants made a false statement, (2) defendants knew the statement to be false, (3) defendants made the statement intending to induce plaintiff to act, (4) plaintiff relied on the truth of the statement, and (5) plaintiff's damages resulted from reliance on the statement. *Cozzi Iron & Metal, Inc.* v. *U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). In addition, plaintiff must show that his reliance on the misrepresentation was justified. *Id.*

6

proposition, defendants rely on *Horbach* v. *Kaczmarek*, 288 F.3d 969 (7th Cir. 2002), where the court states, in relevant part:

> The essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held. . . . An asserted right to money normally will not support a claim for conversion. Only if the money at issue can be described as a specific chattel, . . . in other words, a specific fund or specific money in coin or bills, . . . will conversion lie. Moreover, the plaintiff's right to the money must be absolute. . . . It must be shown that the money claimed, or its equivalent, *at all times* belonged to the plaintiff and that the defendant converted it to his own use.

*Id.* at 978 (internal citations and quotations omitted). In response, plaintiff contends that his conversion claim concerns his right to the "specific chattel," i.e., the proceeds from the pools, and thus he properly alleges a conversion claim.

Plaintiff cannot identify the money owed to him as a specific chattel. When plaintiff initially invested in the pool, there was no indication that the money he invested would be segregated from other funds in the pool. It is, after all, called an "investment *pool*." When the plaintiff invested money into this pool, he ceased to have an ownership interest in that money as a specific chattel. Instead, he acquired a claim on a certain proportion of the overall pool. This is clear from the plaintiff's own pleadings. Plaintiff states that he "had an agreement with the firm entitling [him] to a payment of [his] share of each investment pool upon leaving the firm." (First Am. Compl. ¶ 9.) Similarly, plaintiff states that at the time of his withdrawal from the firm in January 2000, "his pro rata ownership interests in the combined investment pool assets was determined by the firm to be $462,570.87." (First Am. Compl. ¶ 19.) Neither a "share of each investment pool" nor a "pro rata ownership interest" can be equated with a specific chattel. Rather, plaintiff's right was only to an indeterminate sum of money. Thus, he has no claim for

7

conversion under Illinois law. *See, e.g., Eggert* v. *Weisz*, 839 F.2d 1261, 1265 (7th Cir. 1988)(holding that where the plaintiff's right is to an indeterminate sum, the defendant's liability was for a debt rather than a conversion); *In re Thebus*, 108 Ill.2d at 260, 483 N.E.2d at 1260 ("[A]n action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money.").

C. **Service of process**

Defendants make the cursory argument that plaintiff has failed to effect service of process under Rules 4 and 12(b)(5). Specifically, defendants point out that plaintiff effected "service" where plaintiff's counsel ensured that an envelope, that contained copies of the complaint, was left for defendants with the receptionist at the law firm. In response, plaintiff concedes that he did not comply with proper service under Rule 4 but asserts that defendants waived service of process based on defendant Stuart Smith's initial representation that the individual defendants "wished" to receive service at the law firm; and defendants' counsel's subsequent email that defendants would not challenge plaintiff on this failure to effect proper service if the parties agreed on a date for defendants to file a responsive pleading to plaintiff's first amended complaint.

Under Rule 4(d), plaintiff did not comply with the proper requirements for waiver of service of process.[4] Further, under Rule 4(m), the 120-day time period for plaintiff to effect

---

[4] According to Rule 4(d), even when formal service is waived, that plaintiff must obtain waiver by notifying the defendant of the commencement of the action and requesting that the defendant waive service. Fed. R. Civ. P. 4(d)(2). The notice and request must be in writing and addressed to the defendant or other authorized person, sent through the mail or otherwise reliably delivered, and must include a prepaid means of compliance in writing. Fed. R. Civ. P. 4(d)(2)(A)-(G). Further, the signed waiver of service must be filed with the court by the plaintiff. Fed. R. Civ. P. 4(d)(4).

8

proper service has expired. Thus, the court may dismiss the lawsuit or direct plaintiff to effect service of process on defendants if plaintiff demonstrates good cause for his initial failure.

Here, plaintiff demonstrates good cause for his failure to effect service. Plaintiff's evidence demonstrates that defendants' argument about proper service is trivial. Nevertheless, absent a waiver evidenced by compliance with Rule 4(d), defendants are entitled to proper service of process. Therefore, should plaintiff file an amended complaint, he is given 60 days from that filing date to effect service of process.

## ORDER

For the reasons set forth above, the court grants defendants' motion to dismiss. Plaintiff's lawsuit is dismissed without prejudice and with leave to re-plead. Plaintiff has until October 10, 2003 to file a second amended complaint. If he fails to do so, the court will dismiss his lawsuit with prejudice. Plaintiff is given until December 9, 2003 to effect service of process under Rule 4.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: September 3, 2003