Minute Order Form (06/97)



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1617 | **DATE** | 2/10/2004 |
| **CASE TITLE** | Fogel vs. Gordon & Glickson, P.C., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, defendants' motion to dismiss [16-1] is granted and case is dismissed with prejudice. All pending motions are terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | 2-11-04 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. Mailed by MD. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/10/2004 | |
| | | | date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD L. FOGEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 1617 |
| | ) | Judge Joan H. Lefkow |
| GORDON & GLICKSON, P.C., an Illinois | ) | |
| Professional Corporation, GORDON & | ) | |
| GLICKSON, L.L.C., an Illinois Limited | ) | |
| Liability Corporation, and MICHAEL E.C. | ) | |
| MOSS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard L. Fogel ("Fogel") has filed a one-count second amended complaint against defendants Gordon & Glickson, P.C., Gordon & Glickson, L.L.C., and Michael E.C. Moss ("Moss"). Fogel alleges defendants are liable for fraud. Defendants have moved to dismiss the second amended complaint based on Fogel's failure to plead fraud under Federal Rules of Civil Procedure 9(b) and 12(b)(6). The court has diversity jurisdiction under 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties[1] and the amount in controversy exceeds $75,000. For the reasons set forth below, the motion is granted.

---

[1] Fogel alleges he is a citizen of New Mexico. As for defendants, Fogel alleges that Gordon & Glickson, L.L.C. is a limited liability corporation. "[T]he citizenship of an L.L.C. for purposes of diversity jurisdiction is the citizenship of its own members." *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). Although Fogel alleges he was a member of Gordon & Glickson, L.L.C., he alleges that he subsequently withdrew from it. Further, in his First Amended Complaint, Fogel alleged that all Equity Holders of Gordon & Glickson, L.L.C. are citizens of Illinois. Thus, Gordon & Glickson, L.L.C. is a citizen of Illinois. Finally, Fogel alleges that Gordon & Glickson, P.C. is a professional corporation that is incorporated and has its principal place of business in Illinois. The citizenship of a professional corporation is its state of incorporation and principal place of business. *Cote v. Wadel*, 796 F.2d 981, 983 (7th Cir. 1986). Thus, Gordon & Glickson, P.C. is a citizen of Illinois.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

## ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

The facts, taken as true from plaintiff's second amended complaint, are as follows: In March 1986, Fogel joined the law firm Gordon & Glickson, P.C. (the "P.C.") as an associate attorney. In January 1991, he became an income partner. In January 1993, he became an equity shareholder of the P.C., purchasing 2,500 shares for $2,500.

In 1997 and 1998, respectively, the P.C. created "investment pools" for its equity shareholders. The investment pools were comprised of stocks and stock options received or otherwise purchased from various corporate clients. To purchase these stocks and stock options, the P.C. used funds that it otherwise could have distributed to the equity shareholders. Because the investment pools were assets of the P.C., they were subject to the claims of the P.C.'s general creditors.

The investment pools were managed through an "Asset Management Committee" (the

2

"Investment Committee") comprised of Moss, Mark L. Gordon and Philip P. McGuigan. The Investment Committee handled all transactions for the P.C. with respect to the investment pools and periodically issued reports about these pools to the P.C.'s equity shareholders. The reports detailed the estimated current fair market value of the pools' assets and each equity shareholder's interest in the pools.

On April 30, 1999, the P.C. re-organized and transferred general operations, assets and liabilities to Gordon & Glickson, L.L.C. (the "L.L.C."). At this time, the equity shareholders of the P.C., including Fogel, became members of the L.L.C. Further, the members of the P.C.'s Investment Committee became members of the L.L.C.'s Investment Committee and performed the same duties as before.

In 1999, certain stocks and stock options of the P.C.'s 1997 and 1998 investment pools (the "initial investments") were transferred to the L.L.C. The L.L.C. accounted for these initial investments in the same way as did the P.C. Certain stocks and stock options, however, remained in the P.C.'s 1997 investment pool. This was done because the Investment Committee determined that certain cash and securities should remain in the P.C. to satisfy current and future firm obligations.

At the time of reorganization, the firm created a Deferred Compensation Plan and Agreement (the "Plan") for the benefit of certain employees. The Plan included provisions detailing how deferred compensation was to be paid to employees upon their withdrawal from the firm.

On December 15, 1999, Fogel voluntarily resigned from his position with the law firm and provided a notice of withdrawal from the L.L.C. to be effective January 14, 2000. On the

morning of November 12, 1999, firm member and Investment Committee chair Mark L. Gordon ("Gordon") left two voice mail messages for Fogel urging Fogel to re-draft his notice of withdrawal from the firm to indicate a withdrawal date after January 1, 2000. Gordon suggested that by doing so Fogel would ultimately receive a greater amount of deferred compensation. Based upon Gordon's recommendation, on December 15, 1999, Fogel provided an amended written notice of withdrawal to be effective January 14, 2000. Fogel ceased practicing law as a member of the firm as of January 14, 2000. At the time of his withdrawal, the firm determined that it owed him $462,570.87 in deferred compensation. (Complaint ¶ 17.)

By January, 2000, the firm, through an email to Fogel from Moss, was expressing concern in relation to potential adverse tax ramifications posed by the firm's 1999 reorganization. To facilitate the firm and its members, including Moss, meeting their April 15, 2000, tax filing obligations, the firm decided prior to February 21, 2000, to sell certain stock in the 1997 investment pool and distribute the proceeds of that sale to firm members. According to Fogel, the sale of this stock "would result in the Investment Pool not having sufficient assets to meet firm deferred compensation obligations to Fogel." (*Id.* ¶ 20.) Thus, the firm, through Moss, "began a campaign in January, 2000, to convince Fogel to forego his right to deferred compensation beginning in 2001" and remain a member of the investment pools. (*Id.;* Ex. F.)

Fogel ultimately did not elect the firm's proposal, maintaining his right to receive deferred compensation owed to him. However, Fogel was not advised by the firm that by not accepting their proposal he would not receive full payment of his deferred compensation. (*Id.* ¶ 22.) Firm correspondence in August, 2000, through Moss, indicated that Fogel was "entitled to receive" the entirety of his deferred compensation. (*Id.*, Ex. D.)

4

The sale of the 1997 investment pool stock and the distribution to firm members of the proceeds of that sale occurred prior to the firm's receiving Fogel's decision to retain his deferred compensation rights. Fogel alleges that "the firm effectively denuded the 1997 Investment Pool of any asset that could effectively provide funds to pay Fogel his deferred compensation." (*Id.* ¶ 23.) At the time of the distribution of the proceeds from the sale of the 1997 investment pool stock, Moss and the firm knew Fogel to be the sole creditor of the P.C. At no time before, or concurrent with, the firm's distribution of the proceeds from the sale of the 1997 investment pool stock was Fogel provided with notice that such a distribution would leave insufficient assets in the P.C. to pay Fogel's deferred compensation. (*Id.* ¶ 25.)

On December 28, 2000, Moss wrote letters on both the P.C. and L.L.C. letterhead informing Fogel that "the amount of deferred compensation to which you are entitled is $349,436.64. This amount is to be paid to you in twelve (12) equal quarterly installments . . . ." (*Id.*, Ex. G.) Neither letter indicated that the 1997 investment pool did not contain sufficient assets to pay Fogel his deferred compensation.

Around January 9, 2002, however, Fogel received a letter from Maureen T. Feltman, the administrator for the P.C. and the L.L.C., stating that there were insufficient assets in the P.C. to satisfy the law firm's obligations to Fogel. As of December 31, 2002, defendants owed Fogel $290,669.19, including $252,957.76 from the 1997 investment pool.

## DISCUSSION

Fogel's Complaint clearly states a case for breach of contract. The firm owed him at least $349,436.64 in deferred compensation and failed to pay him the full amount. However, his allegation that defendants defrauded him makes little sense. To successfully state a cause of

action for common law fraud under Illinois law, a plaintiff must plead, among other things, that defendants knowingly made a false statement of material fact with the intent to induce the plaintiff to act in reliance thereon. *See Fitzpatrick v. ACF Properties Group, Inc.*, 231 Ill. App. 3d 690, 711, 595 N.E. 2d 1327, 1341 (Ill. App. 2d Dist. 1992). Fogel alleges that defendants told him that he was entitled to receive $462,570.87 in deferred compensation though they knew that the investment pool did not contain sufficient funds to meet that obligation. Thus, he has alleged that defendants knowingly made false statements and omissions of material facts.

However, Fogel's claim that defendants made these statements with the intent to induce Fogel to remain a creditor–that is, to retain his rights to deferred compensation–is belied by Fogel's own allegations. Fogel alleges that the defendants made the allegedly false statements as part of "a campaign . . . to convince Fogel *to forego his right to deferred compensation* . . . ." (Complaint ¶ 20, emphasis added.) The court fails to see how statements made in the course of such a "campaign" could have been intended to induce Fogel to retain his rights to deferred compensation.

The contradictory logic of Fogel's argument is clearly demonstrated by two statements on successive pages of Fogel's Response to Defendants' Motion to Dismiss. On page 10 of the Response, Fogel states, "The intent of the Defendants was to induce Fogel to believe that if he chose to remain a creditor that the firm would follow the Deferred Compensation Agreement and Plan (charging his creditor rights to the Pool), and to pay over time his entitled deferred compensation." On the next page, Fogel states, "Moss and the firm wanted Fogel to forego his rights as a creditor and take, as an 'investor,' less than he was otherwise entitled. When Fogel declined, Defendants, like spoiled children, took the money anyway and thereafter twisted facts

6

in a scheme that seeks to minimize their collective obligation to Fogel." (Response, at 11.) Unless Fogel would have the court believe that defendants used reverse psychology, touting the benefits of foregoing his rights to deferred compensation as a way to induce him to retain those rights, then Fogel has pled himself out of court.

## ORDER

For the reasons set forth above, the court grants defendants' Motion to Dismiss (#16). Plaintiff's lawsuit is dismissed with prejudice.

ENTER: /s/ Joan H. Lefkow
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: February 10, 2004